```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------x
SONYA GORBEA,
                Plaintiff,
                                        MEMORANDUM & ORDER
        -against-                       11-CV-3758 (KAM)(LB)

VERIZON NEW YORK, INC.,

                Defendant.
--------------------------x
```

**MATSUMOTO, United States District Judge:**

Plaintiff Sonya Gorbea brings this action against her employer, Verizon New York, Inc., alleging employment discrimination and retaliation on the basis of her alleged disabilities of back sprain since 2001 and asthma since 2007, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the New York City Human Rights Law, Administrative Code § 8-107 *et seq.* ("NYCHRL").  (*See generally* Am. Compl., ECF No. 7.)  Presently before the court are plaintiff and defendant's respective motions for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. (Pl. Mot., ECF No. 26; Def. Mot., ECF No. 36.)  As set forth below, plaintiff's motion is denied in its entirety, and defendant's motion is granted in part and denied in part.  The parties shall appear for a status conference on April 2, 2014 at 12pm to discuss a May trial date.

## BACKGROUND

The following facts are drawn primarily from the parties' statements made pursuant to Local Civil Rule 56.1.[1] ("Pl. 56.1 Stmt.," ECF No. 28; "Def. Resp. 56.1 Stmt.," ECF No. 41; "Def. 56.1 Stmt.," ECF No. 38; "Pl. Resp. 56.1 Stmt.," ECF No. 35.) Except where noted, the facts are undisputed. In addition, as will be discussed further below, much of the documentary evidence the parties offer in support of their claims is inadmissible and is therefore not referenced in this fact section. *See Bey v. City of New York*, No. 99-CV-3873, 2009 WL 2033066, at *2 (S.D.N.Y. July 10, 2009) (citing *Sarno v. Douglas Elliman-Gibbons & Ives*, 183 F.3d 155, 160 (2d Cir. 1999)) ("Plaintiffs correctly note that inadmissible evidence, such as hearsay not subject to any exception, cannot be used to support a summary judgment motion."); *see also Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 305 (S.D.N.Y. 2011) (noting that it is "the rule that 'only admissible evidence' need be considered on summary judgment'" and that the "principles governing admissibility of evidence do not change on

---

[1] Local Civil Rule 56.1 provides that a party moving for summary judgment shall annex[] to the notice of motion a separate, short and concise statement," "of the material facts to which the moving party contends there is no genuine issue to be tried." The party opposing the motion must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" with the opposition. Each of these paragraphs must cite to admissible evidence. Local Civ. R. 56.1(a)-(c).

a motion for summary judgment." (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997))).

Plaintiff began working for defendant in 1997, and became a field technician in 1999. (Pl. 56.1 Stmt. ¶ 1; Def. 56.1 Stmt. ¶ 3.) Verizon's job description for field technicians includes, but is not limited to, the requirements of climbing ladders and, in some areas, poles, and moving or lifting 100 or more pounds. (Field Technician description of duties at 2; Casher Decl. Ex. C.)[2] On October 15, 2001, plaintiff suffered an on-the-job injury while moving a ladder and was diagnosed with "lumbosacral sprain." (Pl. 56.1 Stmt. ¶ 2, Ex. 1) Following this injury, plaintiff began to suffer intermittent back problems. (Def. 56.1 Stmt. ¶ 11.) Defendant placed plaintiff on "light duty status," limiting the amount plaintiff had to climb, lift or carry, for various periods of time after this injury, but it is not clear from the record what light duty entailed. (Pl. 56.1 Stmt. ¶ 3; Def. R. 56.1 Stmt. ¶ 13.) Plaintiff was most recently placed on light duty status from March 20, 2007 to February 28, 2011. (Pl. 56.1 Stmt. ¶ 3.) In 2009, plaintiff took three or four weeks of medical leave due to back pain, but otherwise did not require medical leave from approximately 2005 to 2009. (Def. 56.1 Stmt. ¶¶ 15-16.)

---

[2] "Casher Decl." refers to the Declaration of Scott H. Casher, counsel for defendant, ECF No. 39.

3

In addition to her back injury, plaintiff also asserts that she is disabled as a result of her asthma.  According to plaintiff, she developed asthma in 2007.  There is no evidence that plaintiff notified defendant or requested any accommodation for her asthma until July 2010.  (*See* Pl. 56.1 Stmt. ¶ 5; Def. 56.1 Stmt. ¶¶ 10-11.)  On July 7, 2010, plaintiff requested an air-conditioned work vehicle, stating that the temperature in her assigned truck exacerbated her asthma.  (Pl. 56.1 Stmt. ¶ 5; Def. R. 56.1 Stmt. ¶ 18.)  Plaintiff's supervisors did not provide her with an air-conditioned truck.  (Pl. 56.1 Stmt. ¶ 7.)  Plaintiff was absent from work from July 7, 2010, the date of her air-conditioned truck request, to July 26, 2010, and defendant granted plaintiff a Family Medical and Leave Act accommodation due to her asthma on August 5, 2010, but it is not clear from the record what the accommodation was, (Pl. 56.1 Stmt. ¶¶ 9-10.)

The parties disagree about whether an air-conditioned truck was in fact available for plaintiff to use.  (*See* Pl. 56.1 ¶ 8; Def. Resp. 56.1 Stmt. ¶ 8.)  During her deposition, plaintiff stated that she observed available air-conditioned trucks, but estimated that, at the time of her request, only one

to two percent of defendant's trucks had air-conditioning. (Gorbea Dep. Tr. at 47, 160; *see also* Def. R. 56.1 ¶ 22.)[3]

Shortly thereafter, in July or August of 2010, defendant transferred plaintiff and other employees on light duty to its air-conditioned Flatbush Extension facility to perform office work. (Pl. 56.1 Stmt. ¶ 11; Def. 56.1 Stmt. ¶ 23.) Plaintiff continued to work at the Flatbush Extension building through October 2010. (Def. 56.1 Stmt. ¶ 26.) During this period, specifically on September 9, 2010 and October 12, 2010, defendant noted plaintiff's good work attendance. (Pl. 56.1 Stmt. ¶ 13.)

On October 14, 2010, defendant informed the employees in the office in which plaintiff worked that the office would be fumigated that evening in order to rid the space of bed bugs. (Def. 56.1 Stmt. ¶ 27.) Plaintiff was not present during the fumigation; however, the following day at the office, she had difficulty breathing and exited the office to use her inhaler. (Def. 56.1 Stmt. ¶¶ 27-29; Pl. Resp. 56.1 Stmt. ¶ 28.) Plaintiff's manager permitted her to leave work in order to receive medical attention and assisted her in filing an incident report. Plaintiff was absent from work for several days

---

[3] "Gorbea Dep. Tr." refers to the transcript of plaintiff's deposition, held on May 29, 2012. Both plaintiff and defendant have filed copies of the transcript of plaintiff's deposition. While neither party has provided the complete transcript to the court, defendant has submitted a much lengthier portion of the transcript and the court will therefore refer to that version, located at Exhibit B to the Casher Declaration, ECF No. 39-2.

thereafter.  (Pl. 56.1 Stmt. ¶ 17; Def. 56.1 Stmt. ¶¶ 30-31.)
According to the doctor's report associated with plaintiff's
worker's compensation claim, plaintiff saw her doctor on October
15, October 19, October 22, October 29, and November 6, 2010, in
addition to an emergency room visit on October 26.  (Vadhan
Rep., Pl. Ex. 8, ECF No. 29-8.)  Plaintiff's doctor diagnosed
her with reactive airway dysfunction syndrome and bronchospasm
and recommended that plaintiff return to work on December 7,
2010 and limit her exposure to chemicals, dust and high
temperatures.  (Pl. 56.1 Stmt. ¶ 15; Pl. Ex. 8; *see also* Def.
Resp. 56.1 Stmt. ¶ 15 (defendant appears to dispute the severity
of plaintiff's symptoms but not the doctor's diagnoses).)

Following the above incident, plaintiff was absent
from work for several days, including for several hours on
October 18, 2010.  Plaintiff claims that October 18 was a pre-
approved vacation day, but the documentation she submitted does
not established that she was on pre-approved leave on October
18.  (Pl. 56.1 Stmt. ¶ 17; Def. 56.1 Stmt. ¶ 32.)  Defendant
suspended plaintiff for 30 days, from October 21, 2010 to
December 6, 2010, stating that plaintiff's several-hour absence
on October 18 was unauthorized.  (Def. 56.1 Stmt. ¶ 32.)[4]  A

---

[4] The parties' respective positions on whether or not plaintiff was authorized
to be absent from work on October 18, 2010 are wholly unclear.  Plaintiff
states in her Rule 56.1 statement that she had been granted a vacation day, a
fact that defendant admits in its responsive statement.  (Pl. 56.1 Stmt. ¶
17; Def. 56.1 Stmt. ¶ 17.)  There is, however, no evidence on the record

Workers' Compensation Board hearing was held on February 25, 2011 and the Board, on March 2, 2011, subsequently authorized plaintiff's medical care but found that plaintiff's "lost time claimed was due to her being suspended and unrelated to her medical condition." (Pl. Ex. 9, ECF No. 29-9.)

On or about October 29, 2010, during her suspension, plaintiff requested that she be provided with ergonomic equipment for her desk, and submitted her treating physician's letter dated October 29, 2010 in support. (Pl. 56.1 Stmt. ¶ 19.) Plaintiff continued to have back pain when she returned to work and, on December 17, 2010, requested to go home because she was in too much pain to continue working. (Pl. 56.1 Stmt. ¶ 20.) Since that date, plaintiff has been on medical leave. (Pl. 56.1 Stmt. ¶ 29; Def. 56.1 Stmt. ¶¶ 37-39.)

Although she has not submitted any admissible evidence to support this point, plaintiff asserts, and defendant agrees, that, on March 1, 2011, "Defendant was informed that Plaintiff could return to work with similar restrictions to those she had

---

that, as of October 18, plaintiff was given permission to take a vacation day and defendant's briefing indicates that it does not in fact concede that plaintiff was given such permission. (*See, e.g.*, Def. Mem. 16.) Plaintiff has also submitted what appears to be some type of record from Verizon in support of her position that she was permitted to be absent from work on October 18; however, these records are unsworn (indeed, their provenance is unclear), and thus inadmissible, and, in any event, support a finding that plaintiff was suspended for tardiness. Further, plaintiff states in her responsive 56.1 statement that she attempted to come to work on October 18 but that she was unable to do so because of her health. (Pl. Resp. 56.1 Stmt. ¶ 32; *see also* Gorbea Dep. Tr. at 74-75 (discussing this absence as health related).)

previously in the field or to an office with the ergonomic accommodations previously requested so long as her return was gradual." (Pl. 56.1 Stmt. ¶ 21; Def. 56.1 Stmt. ¶ 21.) Again, the record is void of any evidence of what restrictions plaintiff had been granted in the field.

Most of the other circumstances surrounding plaintiff's current medical leave and condition are in dispute. Plaintiff states that Verizon decided in May of 2011 that it could not accommodate plaintiff in either the field or an office, and that a possible accommodation existed (though not within the plaintiff's requested time restrictions) but that this accommodation was never communicated to plaintiff. (Pl. 56.1 Stmt. ¶¶ 22-23, 26.) Defendant asserts that there were no office assignments available for any light-duty technicians by March 2011, citing only plaintiff's deposition testimony that the light-duty technicians she knew at the Flatbush Extension were now back in the field. Defendant submitted no other admissible evidence in support of its contention that office assignments were no longer available as of March 2011. (Def. Resp. 56.1 Stmt. ¶¶ 22-23 (citing Gorbea Dep. Tr. at 92-94).) Defendant further denies plaintiff's claim that light duty assignments in the field are available to plaintiff, asserting only that plaintiff admitted that she lacked personal knowledge about other light duty assignments. (Def. Resp. 56.1 Stmt. ¶

27.)  Again, defendant failed to submit any other admissible evidence regarding the availability, or lack thereof, of light duty field assignments.

The most recent medical documentation in the record regarding plaintiff's health is a July 11, 2011 medical report following an exam performed by Dr. Stanley Soren on the same day.  The report indicates that, as a result of the 2001 injury, plaintiff continued to have a previously diagnosed lumbosacral sprain that constitutes "a minimal mild temporary partial disability" with a "guarded to good" prognosis.  (Soren Rep. at 5.)[5]  During the exam, plaintiff complained of "low back spasms, which come and go with 'paralysis of the legs' for three minutes at a time."  (Soren Rep. at 2).  The doctor recommended home exercise, a supervised weight reduction program and that plaintiff could "return to work in a light-duty capacity, avoiding repetitive bending, twisting, pushing, pulling, climbing or lifting more than an occasional 25 pounds."  (Soren Rep. at 5.)

Plaintiff testified during her May 29, 2012 deposition that she continues to spend time "resting her back" and that she

---

[5] "Soren Rep." refers to Dr. Soren's July 11, 2011 report, which is labeled as Exhibit 1 to the Affirmation of Jesse C. Rose, plaintiff's counsel.  Dr. Soren swore to the contents of the report under penalty of perjury and, therefore, the report is admissible.  *See Quintero v. Rite Aid of N.Y.*, No. 09-CV-6084, 2011 WL 5529818, at *5 (S.D.N.Y. Nov. 10, 2011) (citing 28 U.S.C. § 1746; *LeBoeuf, Lamb, Greene & McRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999)).

requires breaks when walking or sitting in a standard chair.
(Gorbea Dep. Tr. at 107, 163-64.)  She also testified that she
cannot lift more than twenty pounds and that she is unable to
climb.  (Gorbea Dep. Tr. at 140, 156.)  However, plaintiff also
stated that she was able to exercise by walking on the treadmill
three times a week and doing water aerobics, climb the stairs of
her home, and perform housework, such as vacuuming and steam
cleaning.  (Gorbea Dep. Tr. at 105-06, 149, 165.)  During her
deposition, Ms. Gorbea did not describe any current limitations
on her activities due to her asthma.

## DISCUSSION

### I.    Summary Judgment Standard

A court may grant summary judgment only if "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes
when it 'might affect the outcome of the suit under the
governing law.'"  *Jeffreys v. City of New York*, 426 F.3d 549,
553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986)).  "An issue of fact is 'genuine' if 'the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'"  *Id.*  Moreover, no genuine issue of
material fact exists "unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for

that party.  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted).  In evaluating whether the moving party has shown that there is no genuine issue of material fact, "only admissible evidence need be considered by the [district] court in ruling on [the] motion." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks and citation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 83 (2d Cir. 2001).  In opposing a motion for summary judgment, a nonmoving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion."); *Nat'l Westminster Bank USA v. Ross,* 676 F.Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and

mere denials are not enough to raise genuine issues of fact."). Moreover, as previously discussed, the facts put forth in support of a motion for summary judgment must be corroborated by admissible evidence. *See Faulkner*, 797 F. Supp. 2d at 305.

Where, as here, cross-motions for summary judgment are made, the standard is the same as that for individual motions for summary judgment. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Each motion must be considered independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. *Id.* The parties have moved for summary judgment on each of plaintiff's claims: that defendant failed to provide plaintiff with reasonable accommodation, that defendant retaliated against plaintiff, and that defendant failed to engage in the required interactive process with plaintiff. The accommodation and retaliation claims will be addressed in turn, and, for the reasons explained below, the interactive process claim need not be addressed at this time.

## II.  Failure to Provide Reasonable Accommodation

The ADA provides that "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination "unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of

12

the business."  42 U.S.C. § 12112(a), (b)(5)(A).  The NYCHRL also provides that it is unlawful for "an employer or employee or agent thereof, because of the actual of perceived . . . disability . . . of any person, . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  Further, "any person prohibited by the provisions of this section from discrimination on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job."  § 8-107(15)(a).

In order to make a *prima facie* case that an employer has engaged in discrimination by failing to make reasonable accommodations under either the ADA or the NYCHRL,[6] plaintiff must establish that "(1) [she] is a person with a disability under the meaning of the [the statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential

---

[6] "The elements to find discrimination under the . . . NYCHRL generally track the ADA."  *Ugactz v. United Parcel Serv.*, No. 10-CV-1247, 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013) (citing *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261-62 (S.D.N.Y. 2009)).  However, in amending the Human Rights Law in 2005, the New York City Council made clear that the law must "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those with provisions comparably-worded to provisions of this title[,] have been so construed."  *Mihalik v. Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Local Civil Rights Restoration Act of 2005 § 7, N.Y.C. Local L. No. 85)).

functions of the job at issue; and (4) the employer has refused
to make such accommodations." *Goonan v. Fed. Reserve Bank of
N.Y.*, 916 F. Supp. 2d 470, 478-79 (S.D.N.Y. 2013) (quoting
*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183-84 (2d Cir.
2006)).  If a plaintiff can establish a *prima facie* case for
discrimination, "the burden shifts to the employer to
demonstrate that the employee's proposed accommodation would
result in an undue hardship." *Scalera v. Electrograph Sys.,
Inc.*, 848 F. Supp. 2d 352, 360 (E.D.N.Y. 2012) (citing, *inter
alia*, *Stone v. City of Mt. Vernon*, 118 F.3d 92, 97 (2d Cir.
1997)).  Because defendant disputes that plaintiff can
demonstrate that she is disabled, that she could perform her job
with reasonable accommodation and that defendant refused to
accommodate plaintiff (*see* Def. Mem. 7-16), the evidence each
party has adduced for these three elements will be considered in
turn.

Plaintiff claims that defendant failed to accommodate
her asthma and back injury by not providing her with an air-
conditioned truck or ergonomic office equipment and by not
providing plaintiff with an alternative to remaining on medical
leave since December of 2010, in violation of the ADA and the
NYCHRL. (*See generally* Am. Compl.)  For the reasons stated
below, plaintiff's motion as to her accommodation claims is
denied.  Defendant's motion is granted in part and denied in

part; there is no genuine issue of material fact that plaintiff
is not disabled due to her asthma, but issues of fact remain
about whether plaintiff is disabled due to her back sprain and
whether defendant could accommodate plaintiff's alleged
disability due to her back sprain.

   a. Whether plaintiff has a disability

         The parties disagree about whether plaintiff is
disabled under the meaning of the ADA and the NYCHRL.  The ADA
defines disability as "(A) a physical or mental impairment that
substantially limits one or more major life activities of such
individual; (B) a record of such impairment; or (C) being
regarded as having such an impairment."[7]   42 U.S.C. § 12102(1).
Plaintiff identifies a lumbosacral sprain and asthma as two
physical impairments that she contends limit the major life
activities of "repetitive bending, twisting, pushing, pulling,
climbing, lifting, and breathing," as well as working.  (Pl.
Mem. 9-10.)  All of these activities are included in the ADA's

_____

[7] Plaintiff claims both that she has a disability under the meaning of the ADA
and NYCHRL and that she was regarded as having a disability.  The court will
not examine the question of whether defendant regarded plaintiff as having a
disability for two reasons.  First, it is an unsettled question in this
Circuit whether an employer must accommodate an employee who is perceived as
having but does not in fact have a disability.  *See Cameron v. Cmty. Aid for
Retarded Children*, 335 F.3d 60, 64 (2d Cir. 2003) (declining to decide this
question and noting the split in opinion of other circuits on this issue);
*see also Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03-CV-4359, 2013
WL 3491057, at *27 n.12 (E.D.N.Y. July 10, 2013) (noting that this question
remains undecided in the Second Circuit).  Second, while a perceived
disability might be more directly relevant to plaintiff's retaliation claim,
other issues of fact bar finding for either party on plaintiff's retaliation
claim, as will be discussed further below.

non-exhaustive list of major life activities.  *See* 42 U.S.C. §
12102(2)(A).  Although the ADA itself does not define what
constitutes a "substantial limitation," the regulations
promulgated under the statute state a substantial limitation is
one that "substantially limits the ability of an individual to
perform a major life activity as compared to most people in the
general population," but it "need not prevent, or significantly
or severely restrict, the individual from performing [that]
major life activity."  29 C.F.R. § 1630.2(j)(ii).  The
substantial limitation standard "is not meant to be a demanding"
one, 29 C.F.R. § 1630.2(j)(i), and the statute mandates that the
definition of disability "be construed in favor of broad
coverage of individuals," 42 U.S.C. § 12102(4)(A).[8]  Disability
is more broadly defined under the NYCHRL as "any physical,
medical, mental or psychological impairment, or a history or
record of such impairment."  N.Y.C. Admin. Code § 8-102(16)(a);
*see also Debell v. Maimonides Med. Ctr.*, No. 09-CV-3491, 2011 WL
4710818, at *5 (E.D.N.Y. Sept. 30, 2011) (collecting cases and

---

[8] As plaintiff notes, the statutory definition of disability was broadened by
the ADA Amendments Act ("ADAAA"), effective January 1, 2009.  The Second
Circuit has determined that the statute does not apply retroactively.  *See
Ragusa v. Malverne Union Free Sch. Dist.*, 381 Fed. Appx. 85, 87 n.2 (2d Cir.
2010); see *also Petrone*, 2013 WL 3491057, at *17 n.9; *Widomski v. State Univ.
of N.Y. (SUNY) at Orange*, 933 F. Supp. 2d 534, 542-43 (S.D.N.Y. 2013)
(collecting cases addressing the question of the ADAAA's retroactivity).
Although plaintiff is unclear about the precise period of time she contends
defendant failed to accommodate her lumbosacral sprain and asthma, it appears
that her complaint concerns incidents after 2009 and that the amended statute
applies.

comparing the respective definitions of disability under the
NYCHRL and ADA).

>    i. *Whether plaintiff's lumbosacral sprain*
>       *constitutes a disability*

The court will first examine the question of whether
plaintiff's lumbosacral sprain constitutes a disability under
the ADA and NYCHRL.  In support of her contention that certain
major life activities are substantially limited by her back
condition, plaintiff submits the following admissible evidence:
plaintiff's own affidavit, which contains little detail about
her physical limitations as related to her back, her deposition
testimony, and Dr. Soren's report.  Defendant, in making its
summary judgment motion, relies primarily on plaintiff's
deposition testimony to argue that there is no genuine issue of
material fact that plaintiff is not disabled.

The admissible evidence creates a genuine issue of
material fact as to whether plaintiff is limited by her back
condition in the major life activities of bending, twisting,
pushing, pulling, climbing, and lifting, thus precluding summary
judgment in favor of either party on this issue.  On one hand,
Dr. Soren, who evaluated plaintiff on July 11, 2011, opined that
plaintiff had a lumbrosacral sprain that constituted a "minimal
mild temporary partial disability," which would permit her to
return to work "in a light-duty capacity, avoiding repetitive

bending, twisting, pushing, pulling, climbing or lifting more than an occasional 25 pounds." (Soren Rep. 5.) Although the doctor noted some lumbrosacral tenderness and reduced range of spinal motion compared to normal, his prognosis for plaintiff was "guarded to good." (Soren Rep. 4-5.)

On the other hand, plaintiff testified during her more recent deposition, on May 29, 2012, that she is able to do water aerobics and walk on the treadmill three times a week. (Gorbea Dep. Tr. at 105-06.) She also explained that, with breaks, she could stand, sit in a chair, and lift items that are not "too heavy." (Gorbea Dep. Tr. at 163-64.) In addition, Ms. Gorbea testified that she was able to walk up the stairs to the second floor of her house and down the stairs to the basement. (Gorbea Dep. Tr. at 165.) It is unclear from the above information whether plaintiff's ability to bend, twist, push, pull, climb or lift is in fact substantially limited compared to the general population, although Dr. Soren states that plaintiff's back impairment is a disability. *See, e.g.*, *Cortes v. Sky Chefs, Inc.*, 67 Fed. Appx. 66, 68 (2d Cir. 2003) (upholding the district court's determination that a plaintiff's inability to lift more than ten pounds did not substantially limit the major life activity of lifting). In light of this evidence, there remain issues of fact as to whether plaintiff is substantially

18

limited in her ability to bend, twist, push, pull, climb, and lift due to her lumbosacral sprain.[9]

Defendant's motion for summary judgment is granted with respect to whether plaintiff's back injury limits the major life activity of working, however.  Although plaintiff did not plead that she was limited in her ability to work in general, the court will nonetheless consider this recent claim because it is asserted in plaintiff's briefing and defendant has responded to it.  (*See* Am. Compl. ¶ 17 (alleging only that plaintiff is limited "in which she can lift and/or push" due to her back injury).)  Even viewing all the facts in the light most favorable to the plaintiff, there is no genuine issue of material fact that the plaintiff is not substantially limited in her ability to work.  In order to be considered disabled in reference to the major life activity of working under the ADA, a plaintiff must be able to demonstrate at trial that "[her] impairment disqualifies [her] from either a particular class of jobs or a broad range of jobs in various classes, as compared to a non-impaired person of similar training, skill, and experience." *Gaines v. N.Y.C. Trans. Auth.*, 528 F. Supp. 2d

---

[9] Although there are questions of material fact as to plaintiff's limitations due to her lumbosacral sprain, she does meet the definition of disability under the NYCHRL.  As noted previously, the NYCHRL's definition of disability is broad, encompassing any physical impairment.  Defendant has acknowledged that plaintiff's back was injured, that she required light duty for at least periods of her employment and that she suffers from "back problems."  (Def. Resp. 56.1 Stmt. ¶¶ 1, 3; Def. 56.1 Stmt. ¶ 10.)  Plaintiff therefore established that her back problems are deemed a disability under the NYCHRL.

135, 145 (E.D.N.Y. 2007) (citing, *inter alia*, 29 C.F.R. §
1630.2(j)(3)(i)).[10]  There is simply no evidence on the record,
admissible or otherwise, that plaintiff is so limited.
Therefore, the defendant's motion for summary judgment is
granted as to plaintiff's claim that she is substantially
limited by her back condition in her ability to engage int eh
major life activity of working.  For the same reasons,
plaintiff's motion for summary judgment as it pertains to
plaintiff's back impairment and its effect on the major life
activity of working is denied.

> ii. *Whether plaintiff's asthma constitutes a*
> *disability*

Although questions remain about the limitations caused
by plaintiff's lumbosacral sprain, plaintiff is unable to
demonstrate that she is disabled as a result of her asthma.
Therefore, plaintiff's motion for summary judgment on her claims
that she should have been accommodated due to her asthma is
denied, and defendant's motion as to those same claims is
granted.  Plaintiff has submitted no admissible evidence to
demonstrate that her breathing is substantially limited as to
her asthma, with the exception of her deposition testimony and
her affidavit, which is, again, not particularly illuminating as

---

[10] Although the current version of the relevant EEOC regulations no longer
defines a substantial limitation in the major life activity of working, the
Second Circuit has continued to use the definition from the previous version
of the regulations.  *See Cardo v. Arlington Cent. Sch. Dist.*, 473 Fed. Appx.
21, 24 (2d Cir. 2012).

to whether plaintiff is substantially limited due to asthma.[11]
In her deposition, plaintiff does not discuss any substantial
difficulty breathing, but rather testified in the following
manner:

> Q:   Would you say that you are able to perform all of the
> regular major life activities without any issues connected
> to your asthma?
> A:   Yes.
> Q:   You know, things that we do every day?
> A:   Yes.

(Gorbea Dep. Tr. at 162.)  Although at another point in her
deposition, plaintiff described trouble breathing in the past
that she attributed to her work-assigned truck (Gorbea Dep. Tr.
at 20-22), and it is undisputed that plaintiff has asthma, this
evidence is not sufficient to establish that plaintiff is
disabled due to asthma.  *See Burke v. Niagara Mohawk Power
Corp.*, 142 Fed. Appx. 527, 529 (2d Cir. 2005) (noting that
"asthma does not invariably impair a major life activity" and
finding in part due to the fact that plaintiff's asthma attacks
were infrequent that she was not disabled under the ADA);
*Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 207 (E.D.N.Y.
1997) ("Because one plaintiff with asthma is substantially

---

[11] Although plaintiff has included a sworn report from Dr. Deepak Vadhan, who
examined plaintiff after she had difficulty breathing as a result of the
fumes from the bed bug fumigation in the Flatbush Extension, this report
details plaintiff's reaction to those fumes, and states that she should avoid
exposure to chemicals, high temperatures and dust, but does not speak to her
underlying asthma condition or any substantial limitations due to asthma.
(*See* Pl. Ex. 8, ECF No. 29-8.)  The report, though admissible, does not
therefore address the question of plaintiff's disability due to asthma.

limited in the major life activity of breathing does not mean
that every plaintiff with asthma has a qualifying disability
under the ADA."). Even under the more expansive standard of the
ADAAA plaintiff's asthma does not substantially limit her
breathing and plaintiff's own testimony precludes any issue of
fact on this point. For these reasons, plaintiff's motion for
summary judgment on plaintiff's accommodation claims related to
her asthma is denied and defendant's motion regarding
plaintiff's disability due to her asthma is granted.

Although plaintiff likely meets the more expansive
standard for disability due to her asthma under the NYCHRL, the
court declines to undertake this analysis because plaintiff's
accommodation claims as to her asthma are not cognizable under
the federal statute.

b. <u>Whether plaintiff is able to perform the essential
functions of her job with or without accommodation</u>

In addition to disputing whether or not plaintiff has
a disability, the parties disagree as to whether plaintiff is
able to perform the essential functions of her job, with or
without accommodation. Essential functions of a position are
"the fundamental job duties of the employment position the
individual with a disability holds or desires." 29 C.F.R. §
1630.2(n). An employer's view of what constitutes an essential
function of a job should be given "considerable deference,"

*McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013), there are a number of other factors courts must consider when engaging in this analysis, including: "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job;" "[t]he amount of time on the job performing the function;" "[t]he consequences of not requiring the incumbent to perform the function;" "[t]he work experience of past incumbents in the job;" and "[t]he current work experience of incumbents in similar jobs."  29 C.F.R. § 1630.2(n)(3).  "Determining whether physical qualifications are essential functions of a job requires," therefore, "the court to engage in a *highly fact-specific inquiry*. . . . Such a determination should be based on more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved."  *Welch v. United Postal Serv.*, 871 F. Supp. 2d 164, 187 (E.D.N.Y. 2012) (internal citation omitted) (emphasis in the original).

Defendant has submitted the only evidence in the record addressing the essential functions of plaintiff's position, a job description for field technicians.  (Casher Decl. Ex. C.)  Verizon has failed to submit an affidavit from a Verizon employee with knowledge of this job description to attest to its authenticity and accuracy.  Assuming that defendant could provide such a statement and, in the absence of

23

other contrary, admissible evidence, the court would accept that
this document represents the essential functions of the field
technician job, notwithstanding plaintiff's argument that the
fact that some employees were on modified duty indicates
otherwise.  *See McMillan*, 711 F.3d at 126 (discussing the
"considerable deference" due to an employer's determination
about a job's essential functions); *Welch*, 871 F. Supp. 2d at
186 (agreeing that an employee's modified job duties do not
necessarily speak to a job's essential functions).

> c. Whether defendant could have reasonably accommodated
> plaintiff

The final disputed element of plaintiff's
accommodation claim is whether defendant could reasonably
accommodate plaintiff.  Again, genuine issues of material fact
exist as to this question, precluding granting either plaintiff
or defendant's motion.  Under the ADA, an employer must make
reasonable accommodations for a disabled employee, unless the
employer is able to demonstrate that such accommodation "would
impose an undue hardship on the operation of the business."  42
U.S.C. § 12112(b)(5)(A).  An accommodation is not reasonable if
it eliminates a job's essential function.  *Rodal v. Anesthesia
Grp. of Onondaga, P.C.*, 369 F.3d 113, 121 (2d Cir. 2004) (citing
*Shannon v. N.Y.C. Trans. Auth.*, 332 F.3d 95, 100 (2d Cir.
2003)).  At trial, plaintiff bears the burden of establishing,

24

with more than "mere speculation," "that 'an effective accommodation exist[ed] that would render her otherwise qualified.'" *Jackan v. N.Y.S. Dept. of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995)).  The NYCHRL defines a reasonable accommodation similarly to the ADA as one "that can be made that shall not cause undue hardship in the conduct of the covered entity's business."  N.Y.C. Admin. Code § 8-102(18).

Neither party has put forth any admissible evidence regarding the specifics of any accommodations in plaintiff's previous job duties, why she could not have continued in that role, and whether any other reasonable accommodations existed at the relevant time.  Plaintiff alleges, without specifying a time frame, that "[t]here were enough light duty assignments that Defendant Verizon could continue to employ Plaintiff in a light duty capacity as a technician," and cites to the affidavits of plaintiff and Raymond Spencer, a Verizon field technician who has been on medical leave since May of 2011.  (Pl. 56.1 Stmt. ¶ 27; *see also* Pl. Mem. 10-11.)  Neither affidavit establishes that plaintiff or Mr. Spencer had personal knowledge of the existence of the light duty field technician jobs at Verizon.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge").  Similarly, defendant also offers

25

no admissible evidence at all about plaintiff's former position
and why it is no longer available to her, stating only that
light duty technicians no longer work at the Flatbush Extension.
(*See* Def. Rep. 56.1 Stmt. ¶ 23.)  There is similarly no
statement in the record by a Verizon employee with knowledge
that would clarify or eliminate questions of fact about what
positions are available and what burden, if any, accommodating
plaintiff would create for defendant.

For the foregoing reasons, questions of fact remain
about whether plaintiff's back injury was disabling under the
ADA and whether the defendant could reasonably have accommodated
her.  These issues of face preclude summary judgment in favor of
either the plaintiff or the defendant regarding plaintiff's
alleged disability based on plaintiff's back condition.[12]

### III. Plaintiff's Claims of Retaliation

For the reasons stated below, issues of fact preclude
granting summary judgment in favor of either party on
plaintiff's retaliation claims as they relate to her suspension,
but summary judgment is granted in favor of defendant as to

---

[12]  Plaintiff also makes a separate claim that Verizon failed to engage in the
interactive process contemplated by the ADA in order to determine whether an
accommodation exists.  The Second Circuit has concurred with other federal
appellate courts that "failure to engage in an interactive process does not
form the basis of an ADA claim in the absence of evidence that accommodation
was possible." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92,
100 (2d Cir. 2009) (collecting cases).  In light of the lack of clarity in
the record about whether a reasonable accommodation was available regarding
plaintiff's alleged back condition, plaintiff, the court will not evaluate
plaintiff's failure to engage in the interactive process claim at this time.

plaintiff's claim that her current medical leave is retaliatory. Plaintiff's motion, insofar as it asserts that plaintiff was placed on medical leave in retaliation for activity protected under the ADA or NYCHRL, is denied.

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[13]  42 U.S.C. § 12203(a). For retaliation claims under the ADA, courts employ the same burden-shifting analysis used for discrimination claims. *Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999) (citation omitted).

Thus, to establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of the activity, (3) an employment action adverse to

---

[13] In the Amended Complaint, plaintiff makes a claim of retaliation under the New York City Human Rights Law only; however, in her summary judgment papers, she also makes her retaliation argument pursuant to the ADA.  In general, a court need not consider those claims raised for the first time on summary judgment.  *See Lyman v. CSX Transp., Inc.*, 364 Fed. Appx. 699, 701 (2d Cir. 2010) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006); *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir. 1956); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Produce* § 1183, at 23 n.9 (3d ed. 2004)).  The rationale for this rule is "to give defendants fair notice of the nature of the plaintiff's claim." *Thomas v. Egan*, 1 Fed. Appx. 52, 54 (2d Cir. 2001) (citing Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Nonetheless, because the legal standard for prohibited retaliation under the ADA and the NYCHRL are similar and because defendant addresses the ADA claim in its papers, the court will consider the question of retaliation under both the federal statute and city code.

the plaintiff occurred, and (4) there existed a causal
connection between the protected activity and the adverse
employment action." *Id.* (quotation and citation omitted).
Once a plaintiff has established a *prima facie* case of
retaliation, a presumption of retaliation arises and the burden
shifts to defendants to show that the alleged adverse employment
action was taken for legitimate, non-retaliatory
reasons. *See Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166,
173 (2d Cir.2005). Finally, "once an employer offers such
proof," the burden shifts back to plaintiff, who has the
ultimate burden of showing that the proffered reasons are a
pretext for retaliation. *Id.*

        The NYCHRL similarly protects those who "oppose[] any
practice forbidden under" the law or file a complaint from
retaliation for those actions. N.Y.C. Admin. Code § 8-107(7).
As for discrimination claims, retaliation claims under the
NYCHRL are evaluated under the same burden-shifting test as ADA
claims; however, the court must bear in mind "the NYCHRL's
'uniquely broad and remedial purposes,'" and, "in the
retaliation context," may not "categorically reject[]" any "type
of challenged conduct . . . as nonactionable." *Williams*, 836 F.
Supp. 2d at 171 (internal citations and quotation marks
omitted).

Although the Amended Complaint and plaintiff's briefing are not clear, it appears that plaintiff considers two incidents to be retaliatory: 1) plaintiff's six-week suspension between October 21, 2010 and December 3, 2010, purportedly for a work time violation on October 18, 2010 for being off the job without management's permission (although plaintiff alleges that she was granted a previously approved vacation day on October 18, 2010 for the time of her absence, she has submitted no admissible supporting documents and further asserts that she was in fact suspended for complaining about the fumes in the Flatbush Extension (Am. Compl. ¶ 36-37, 39)); and 2) plaintiff's current, involuntary medical leave "in retaliation for her complaints of discrimination," (Am. Compl. ¶ 43).

As a preliminary matter, the court finds, contrary to defendant's arguments in its briefing, that plaintiff did engage in protected activity prior to both her suspension and her medical leave.  It is undisputed that prior to her medical leave, plaintiff requested ergonomic equipment and informed defendant that she was unable to work due to her back pain. (Pl. 56.1 Stmt. ¶¶ 19-20.)  It is also undisputed that plaintiff filed an incident report about the office fumigation on October 17, 2010, prior to her suspension.  (Def. 56.1 Stmt. ¶ 31.) Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's

alleged disability are protected activities.  *See, e.g.*, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002); *Pacheco v. Park S. Hotel, LLC*, No. 12-CV-9127, 2014 WL 292348, at *4 (E.D.N.Y. Jan. 27, 2014); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 293 (S.D.N.Y. 2004).

There are questions of fact in the record before the court as to whether plaintiff could establish a prima facie retaliation case under the ADA or NYCHRL at trial as to her suspension.  Neither party has submitted any admissible evidence regarding the reason for plaintiff's suspension and neither party's explanation for the suspension is internally consistent. On one hand, defendant appears to concede at points in the record that plaintiff had vacation time and was not required to work on October 18, 2010, the day her absence led to her suspension.  (Pl. 56.1 Stmt. ¶ 17; Def. Resp. 56.1 Stmt. ¶ 17.) On the other hand, plaintiff herself both asserts that on October 18, she had pre-authorized vacation time and that she reported to work but could not remain there (in contrast to defendant's assertion that she was absent).  (Pl. 56.1 Stmt. ¶ 17; Pl. Resp. 56.1 Stmt. ¶ 32.)  Further, the parties agree that four months after the plaintiff's suspension, the Workers' Compensation Board ordered that plaintiff be compensated for her medical bills due to the fumigation (Pl. 56.1 Stmt. ¶ 16; Def. Resp. 56.1 Stmt. 16).  The Board's decision, however, indicates

that plaintiff's lost time was not compensable because it was related to her suspension and not to any medical condition. (Pl. Ex. 9.)  In light of these contradictions and the general lack of admissible evidence regarding plaintiff's suspension, there remain issues of fact as to whether plaintiff's suspension was related to protected activity.  As a result of these questions of fact, both plaintiff and defendant's motions are denied as to plaintiff's claim that her suspension was retaliatory.

Summary judgment is granted in favor of defendant as to plaintiff's claim that her current medical leave is retaliatory, and plaintiff's motion for summary judgment on this issue is denied.  Plaintiff states that her current medical leave constitutes retaliation because defendant has refused to allow her to return to work.  (Am. Compl. ¶ 43.)  There is no evidence in the record, however, that plaintiff has requested that she be reinstated as a field technician, or that Verizon has denied such request.  To the contrary, plaintiff testified that she had not spoken to her managers about returning and instead simply communicated with Verizon's disability insurance company about her restrictions.  (Gorbea Dep. Tr. at 93-94; *see also* Gorbea Dept. Tr. at 104.)  She further testified that she had not sought out other roles at Verizon that would have suited her limitations.  (Gorbea Dept. Tr. at 128-29.)  There is, in

31

sum, no evidence that plaintiff affirmatively sought and was denied an opportunity to return to work.

Although defendant moves for summary judgment on all of plaintiff's claims, defendant, in its briefing, focuses on the question of whether plaintiff engaged in protected activity, rather than whether, by remaining on medical leave, plaintiff was subject to a retaliatory action.  Nonetheless, the court grants summary judgment on the basis of undisputed evidence that plaintiff requested medical leave and has not requested of her employer that she return to work, and thus, plaintiff was not barred by Verizon from doing so.  Plaintiff has asserted, both in her own Rule 56.1 statement and in her responsive 56.1 statement, that plaintiff has been refused the ability to return to work.  (Pl. 56.1 Stmt. ¶ 29; Pl. Resp. 56.1 Stmt. ¶¶ 38, 40-41.)  She has, as detailed above, not supported that contention and has even eliminated any question of fact with her own testimony.  (*See, e.g.*, Gorbea Tr. at 93-94 (plaintiff's statement that she hasn't "spoken to managers" about returning to work).)  *See also* Fed. R. Civ. P. 56.1(e)(3)-(4) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or issue any other appropriate order.").  Summary judgment

is therefore awarded to defendant on this portion of plaintiff's retaliation claim that defendant retaliated by refusing to allow her to return from medical leave.

## CONCLUSION

For the aforementioned reasons, there are genuine issues of material fact regarding plaintiff's accommodation claim as to her back impairment and her retaliation claims as to her suspension.  Therefore, both plaintiff and defendant's motions for summary judgment are denied on these issues, and defendant's motion is granted to the extent described in this order.  The parties shall appear for a status conference on April 2, 2014 at 12pm to discuss pretrial matters and a May trial date.

SO ORDERED.

_____/s/_____
Kiyo A. Matsumoto
United States District Judge

Dated:    Brooklyn, New York
          March 10, 2014